Filed 7/14/16  Roadtrek Motorhomes v. Calif. New Motor Vehicle Bd. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ROADTREK MOTORHOMES, INC., | |
| Plaintiff and Appellant, | G049534 |
| v. | (Super. Ct. No. 30-2013-00624042) |
| CALIFORNIA NEW MOTOR VEHICLE BOARD, | O P I N I O N |
| Defendant and Respondent; | |
| MEGA RV CORP., | |
| Real Party in Interest and Respondent. | |
| MEGA RV CORP., | |
| Plaintiff and Appellant, | G049781 |
| v. | (Super. Ct. No. 30-2012-00602460) |
| CALIFORNIA NEW MOTOR VEHICLE BOARD, | |
| Defendant and Respondent; | |
| ROADTREK MOTORHOMES, INC., | |
| Real Party in Interest and Respondent. | |

Appeals from judgments of the Superior Court of Orange County, David R. Chaffee, Judge. One judgment affirmed. One judgment affirmed in part and reversed in part.

Seyfarth Shaw and James M. Harris; Dykema Gossett, Tamara A. Bush and Louis S. Chronowski for Plaintiff and Appellant in No. G049534 and for Real Party in Interest and Respondent in No. G049781.

Adam K. Obeid; Law Offices of John Belcher and John A. Belcher for Plaintiff and Appellant in No. G049781 and for Real Party in Interest and Respondent in No. G049534.

No appearance for Defendant and Respondent.

\*          \*          \*

This opinion concerns two cases consolidated for appeal. Each appeal is from a judgment denying a petition for a writ of administrative mandamus (Code Civ. Proc., § 1094.5) that sought to overturn rulings by the California New Motor Vehicle Board (Board) concerning the parties' recreational vehicle franchises. (Veh. Code, §§ 3050, subd. (d), 3070 et seq.; unless otherwise indicated, all further statutory references are to the Vehicle Code.)

In *Roadtrek Motorhomes, Inc. v. New Motor Vehicle Board (Mega RV Corp.)* (Super. Ct. Orange County, 2013, No. 30-2013-00624042) (case No. G049534), Roadtrek Motorhomes, Inc. (Roadtrek) challenged the Board's decision to sustain nine protests filed by Mega RV Corporation (Mega). These protests involved modifications of a franchise, the establishment of a competing franchise within the relevant marketing area of a Mega dealership, plus alleged violations of warranty reimbursement and sales incentive obligations at three separate dealerships. In the second case, *Mega RV Corp. v. New Motor Vehicle Board (Roadtrek Motorhomes, Inc.)* (Super. Ct. Orange County, 2012, No. 30-2012-00602460) (case No. G049781), Mega challenged the Board's decision to overrule its protests that alleged Roadtrek improperly terminated two

2

franchises.  After a joint hearing, the trial court entered judgments denying each petition in its entirety.

We conclude it was error to sustain Mega's two modification protests. Thus, we reverse, in part, the judgment in case No. G049534 with directions to vacate the Board's decision overruling those protests and rehear them.  In all other respects, we affirm both judgments.

I

FACTS AND PROCEDURAL BACKGROUND

Roadtrek is a recreational vehicle manufacturer.  Mega operated several dealerships that sold 60 different brands of recreational vehicles from 10 different manufactures, including models produced by Roadtrek.  Mega began selling Roadtrek vehicles in 2001.  According to Mega's witnesses, Roadtrek vehicle sales amounted to about 10 to 15 percent of the dealership's inventory.  However, Mega's sales of Roadtrek vehicles constituted a significant percentage of the manufacturer's business.

According to the Board's factual findings, Mega initially financed wholesale purchases of Roadtrek vehicles through flooring plans with lenders.  Roadtrek assisted Mega and other dealers by reimbursing them for interest owed to a lender up to a maximum of 90 days.  In late 2005, Roadtrek orally proposed that it provide Mega with vehicles "on the arm," meaning Roadtrek would deliver vehicles to Mega without charge and Mega would pay Roadtrek for each vehicle as it was sold.  Based on the evidence, the Board found, "Although there were friendly discussions . . . about interest and the terms of the arrangement, nothing was reduced to writing and no invoices were sent to Mega RV for interest."  Nor was there any written agreement on when Mega needed to pay Roadtrek after it sold a vehicle to a retail customer.

In early 2006, the parties formalized their relationship by executing a written dealer agreement that covered sales from Mega's Colton, Irvine, and Stanton

3

dealerships. Mega later closed the Stanton dealership and the parties' disputes do not concern it.

The dealer agreement stated it was for three years, but the Board found the parties contemplated renewing it. The contract provided Mega "shall have the exclusive right to purchase, display and resell Roadtrek[ vehicles], parts and accessories in the Territory as mutually agreed to" by the parties. Section 108 of the agreement defined Mega's territory as "an area within 60 mile radii of Irvine, California, Colton, California and Stanton, California. So long as [Mega] remains in good standing during the terms of this Agreement, [Roadtrek] will not locate another dealer within [Mega's] territory." The dealer agreement further provided that, "to remain in good standing under this Agreement," Mega was required to "stock[] and prominently display[]" a specified number of four Roadtrek models at each of the three dealerships.

Section 111 of the dealer agreement also required Mega to annually "purchase for retail sale" at least 100 Roadtrek vehicles. This section provided Roadtrek would "work with" Mega "to expand [its] operation," and Mega promised that in the event it "expands . . . to new locations, Roadtrek will be the number one selling class B motorhome" at the dealership. In addition, the dealer agreement obligated Mega to perform warranty and service repairs on Roadtrek vehicles, "maintain . . . such total investment, net working capital, adequate lines of wholesale credit and . . . financing plans . . . that will enable [Mega] to fulfill [its] responsibilities under this agreement," and to annually "furnish . . . a complete financial statement reflecting the true financial condition of the dealership operations."

For its part, Roadtrek agreed to "reimburse" Mega for labor and parts on warranty repairs, and "deduct from each [vehicle] invoice all consumer and dealer rebates and incentives . . . and salesperson cash incentives." Roadtrek also promised not to "terminate, cancel, fail to renew or substantially change the material terms of this Agreement (including the Territory) without good cause." The phrase "good cause" was

4

defined as including "Any material breach of this Agreement." In addition with certain exceptions, one of which was a "failure to meet sales commitments in section 111," the agreement required Roadtrek to "provide [Mega] at least 365 days prior written notice of termination, cancellation, failure to renew or substantial change in the material terms" that contained a statement of "the reasons for such action."

The same year, 2006, Mega opened a new dealership in Scotts Valley, California. Subsequently, the parties entered into a dealer agreement for Scotts Valley that was similar to the agreement covering Irvine and Colton.

Beginning in late 2007, the recreational vehicle industry began experiencing a severe contraction, with many manufacturers and dealerships filing for bankruptcy or going out of business. According to the Board's factual findings, around this time Roadtrek claimed Mega owed interest on vehicles delivered to it, including vehicle deliveries for both 2006 and 2007. At a contentious meeting in early 2008, the parties agreed they would return to the former flooring plan and that Mega would pay $70,000 in interest for vehicles delivered to it in 2006 and 2007.

At this time, the parties also executed a security agreement covering the financial terms of Mega's wholesale purchase of Roadtrek vehicles. The security agreement included provisions allowing Roadtrek to accelerate the payment of Mega's obligations in the event of a default, and gave Roadtrek the status of a secured party under the Uniform Commercial Code.

Mega made the first of two installments on the past interest, but failed to pay the second installment. The Board also found Mega's payments to Roadtrek on sales of its vehicles were routinely late with the delays becoming even longer in 2009. In addition, purportedly in response to Roadtrek's failure to pay rebates, Mega stopped paying Roadtrek for parts and began "short paying" Roadtrek, i.e., making payments on vehicle sales for less than the amount invoiced. According to the Board's findings,

5

without informing Mega, Roadtrek started offsetting monies owed to Mega for warranty claims and sale incentives to cover what it believed were Mega's outstanding obligations.

Beginning in late 2008 and continuing throughout the first half of 2009, representatives of both parties met in efforts to resolve their differences without success. In September 2009, Roadtrek informed Mega that it was going to remove Mega from its flooring plan. Mega promised to obtain lender financing for Roadtrek vehicles. But due to its outstanding obligations on other vehicle brands, Mega was unable to do so. Roadtrek repossessed its vehicles from Mega's dealerships in October and stopped sending new vehicles to Mega.

The parties met again in December 2009 and reached a tentative settlement of their differences. However, Mega refused to sign the final draft of the settlement's terms. Roadtrek then sent Mega a notice declaring that, in compliance with the Uniform Commercial Code, it would "need adequate assurances" before the parties could conduct any further business transactions. Mega responded in an e-mail stating, "Good luck."

The next month, Roadtrek signed a dealer agreement with Mike Thompson RV (MTRV), a Mega competitor. MTRV had four dealerships in the area, one of which was located across the street from Mega's Colton dealership. In June 2010, Roadtrek gave Mega notice of its decision to terminate both the Colton/Irvine and Scotts Valley dealer agreements in 60 days.

Between January and July 2010, Mega filed 18 protests with the Board alleging Roadtrek violated provisions of both the parties' dealer agreements and its statutory obligations under New Motor Vehicle Board Act (§ 3050 et seq.). Before any hearings, the protests at issue were reduced to 12. Another protest was later dismissed before a ruling was issued. In addition, a federal lawsuit was filed, but the action was stayed pending the Board's rulings on the protests.

The remaining 11 protests consisted of the following claims: (1) Two alleging Roadtrek unlawfully terminated the Colton/Irvine and Scotts Valley dealer

6

agreements in violation of section 3070, subdivision (a) (Nos. PR-2244-10 & PR-2245-10); (2) two alleging Roadtrek unlawfully modified the Colton/Irvine franchise in violation of section 3070, subdivision (b), when it established MTRV as a Roadtrek dealer within Mega's exclusive territory without notice (Nos. PR-2199-10 & PR-2201-10); (3) one alleging Roadtrek violated section 3072 by establishing MTRV as a Roadtrek dealer within the relevant market area of Mega's Colton dealership without notice (No. PR-2233-10); (4) three alleging Roadtrek violated section 3075 by failing to fully reimburse Mega for warranty repairs performed at its Colton, Irvine, and Scotts Valley dealerships (Nos. PR-2206-10, PR-2208-10 & PR-2209-10); and (5) three alleging Roadtrek violated section 3076 by failing to pay monies owed under its franchisor incentive plan at the same dealerships.

In early 2012, while the administrative proceedings were still pending, Mega moved its Irvine dealership to Westminster, California.

After lengthy evidentiary hearings, an administrative law judge (ALJ) issued proposed decisions recommending that Mega's establishment, warranty reimbursement, and franchisor incentive program protests be sustained, but overruling the protests that alleged Roadtrek had unlawfully terminated the franchises and modified the Colton/Irvine franchise. A hearing before the Board resulted in a reversal of the ALJ's ruling on the modification protests. But otherwise, the Board affirmed the ALJ's proposed decisions.

Mega filed a petition challenging the Board's decision to overrule the two protests that asserted Roadtrek lacked the authority to terminate its franchises. In a separate petition, Roadtrek challenged the Board's orders sustaining the other nine protests. After a joint hearing, the trial court issued a 10-page minute order and entered judgments denying both petitions in their entirety.

7

II

DISCUSSION

A.  *Scope of Review*

The Legislature enacted the New Motor Vehicle Board Act to regulate the franchise relationships between vehicle manufacturers, distributors, and dealers. (*Powerhouse Motorsports Group, Inc. v. Yamaha Motor Corp., U.S.A.* (2013) 221 Cal.App.4th 867, 877-878; *Tovas v. American Honda Motor Co.* (1997) 57 Cal.App.4th 506, 512-513.)  The Act established the Board and conferred on it certain duties, one of which is to "[h]ear and decide, within the limitations and in accordance with the procedure provided, a protest presented by a franchisee pursuant to Section[s] 3060, 3062, 3064, 3065, 3065.1, 3070, 3072, 3074, 3075, or 3076."  (§ 3050, subd. (d).)

The Board has been described as "a quasi-judicial administrative agency of limited jurisdiction."  (*Ri-Joyce, Inc. v. New Motor Vehicle Bd.* (1992) 2 Cal.App.4th 445, 455 (*Ri-Joyce*); *Mazda Motor of America, Inc. v. New Motor Vehicle Bd.* (2003) 110 Cal.App.4th 1451, 1457; § 3050.)  "It does not have plenary authority to resolve any and all disputes which may arise between a franchisor and a franchisee."  (*Ri-Joyce*, *supra*, 2 Cal.App.4th at p. 455.)  Subdivision (f) of section 3050 expressly recognizes the limitations on the scope of the Board's authority, declaring "the courts have jurisdiction over all common law and statutory claims originally cognizable in the courts," and "[f]or those claims, a party may initiate an action directly in any court of competent jurisdiction."  Thus, "[w]hile the Vehicle Code gives the Board statutory authority to hear specific protests by franchisees . . ., it does not replace the judiciary with the Board as the forum for litigating other statutory and common law causes of action."  (*Hardin Oldsmobile v. New Motor Vehicle Bd.* (1997) 52 Cal.App.4th 585, 597.)

The parties' relationship in these cases is one of franchisor and franchisee under the Vehicle Code.  (§§ 331.1 [defining franchisee], 331.2 [defining franchisor] & 331.3 [defining recreational vehicle franchise].)  And the protests at issue in these cases

8

fall within the scope of the Board's jurisdiction. Mega's protests challenged Roadtrek's termination of the Colton/Irvine and Scotts Valley franchises (§ 3070, subd. (a)), modification of the Colton and Irvine dealership agreement's terms (§ 3070, subd. (b)(1)), establishment of a new Roadtrek franchise within the Colton dealership's relevant market area (§ 3072), and Roadtrek's failure to comply with its obligations concerning warranty repair reimbursements (§ 3075) and incentive payments (§ 3076).

In addition, the Board's final decision is subject to judicial review. (*Duarte & Witting, Inc. v. New Motor Vehicle Bd.* (2002) 104 Cal.App.4th 626, 632.) Since this case concerns the parties' economic interests, judicial review of the Board's ruling is governed by Code of Civil Procedure section 1094.5, subdivision (b). "The inquiry in such a case shall extend to the questions whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (Code Civ. Proc., § 1094.5, subd. (b).)

Here, the parties' arguments are largely focused on the scope of the Board's jurisdiction and the Board's interpretation of the relevant statutes. We conclude these issues involve questions of law subject to our de novo review. (*Duarte & Witting, Inc. v. New Motor Vehicle Bd.*, *supra*, 104 Cal.App.4th at p. 632.)

B. *The Termination Protests: Nos. PR-2244-10 and PR-2245-10*

1. *Background*

Section 3070, subdivision (a), declares "Notwithstanding . . . the terms of any franchise, a franchisor of a dealer of new recreational vehicles . . . may not terminate or refuse to continue a franchise unless" certain conditions are met. The applicable requisite conditions for this case were: (1) giving "[t]he franchisee and the board" 60

9

days "written notice" of the action (§ 3070, subd. (a)(1)(A)) and, (2) since Mega timely filed a protest, a finding by "the board . . . that there is good cause for termination or refusal to continue, following a hearing" (§ 3070, subd. (a)(2)). The determination of "whether good cause has been established" to terminate Mega's franchises required the board to consider "the existing circumstances, including, but not limited to" the factors set forth in subdivisions (a) through (g) of section 3071.

In June 2010, Roadtrek gave Mega and the Board 60 day's written notice of its decision to terminate both the Colton/Irvine and Scotts Valley franchises. In its protests challenging the terminations, Mega alleged Roadtrek lacked good cause to terminate the franchises. However, before the hearing, Mega filed a motion in limine, seeking "an order dispensing with a hearing" on the issue of good cause. Mega then argued there was a de facto termination of the franchises in late 2009 and early 2010 when Mega could not "acquire Roadtrek vehicles, parts, and compensation for warranty service," and Roadtrek established "MTRV as a Roadtrek franchisee . . . within [Mega's] exclusive territory . . . ."

An ALJ denied Mega's motion. First, he concluded the remedy sought by Mega exceeded the Board's jurisdiction. Noting Mega's theory was that Roadtrek's actions in late 2009 constituted a material breach of the franchise agreements, the ALJ ruled "[t]he Board's powers under Section 3070 are limited to whether there is good cause for a termination and [to] provide a hearing as to these issues." "The proper venue" for determining whether Roadtrek's prior actions materially breached the franchise agreements "would be the courts." Second, the ALJ noted Roadtrek had the burden of proof to establish good cause to terminate the franchises (§ 3066, subd. (b)). Third, he ruled the conduct Mega claimed amounted to a de facto termination of the franchises constituted "part of the 'existing circumstances'" that "must be considered by the Board" in determining whether good cause existed to terminate the franchises, which "can be thoroughly explored and resolved during the hearing on the termination protests."

10

After a hearing on these protests, the Board reviewed the evidence, made factual findings, and issued its decision overruling the protests. On the Scotts Valley franchise, the Board upheld another prehearing ruling by the ALJ that recommended granting Roadtrek's motion to dismiss No. PR-2245-10 because Mega's voluntary closure of that dealership mooted the protest.

As for the Colton/Irvine franchise, the Board first concluded Mega's decision to transfer its Irvine dealership to Westminster eliminated the need to determine whether Roadtrek had good cause to terminate the franchise as to the Irvine dealership. "[T]here is no franchise for Mega RV to sell Roadtrek vans from its Westminster dealership[,]" and "[a]s Mega RV is no longer operating a dealership at the Irvine location, there is no existing Roadtrek dealership the closure of which would be caused by the termination of the franchise for the Irvine location. This location has already been closed and the impact upon the public, the franchisee and the RV business has already occurred. The Board could not order that the protest be sustained and enable Mega RV to remain in operation at the former Irvine location." While acknowledging section 111 of the 2006 dealership agreement authorized Mega to *expand* its operations, the Board concluded this clause did not permit Mega to "*relocat[e]* . . . an existing dealership." (Italics added.)

As for the Colton dealership, the Board considered the entire history of the parties' relationship and concluded the existing circumstances and four of the seven factors listed in section 3071 supported a conclusion good cause existed for Roadtrek's termination of the franchise.

The trial court upheld the sustaining of the termination protests. The court agreed with the Board's reason for overruling the Scotts Valley termination protest, and agreed the evidence supported the Board's good cause finding as to the Colton dealership. It disagreed with the Board's reasoning on the Irvine dealership, but found no

11

prejudicial error since the evidence supporting good cause to terminate the Colton dealership equally applied to the Irvine/Westminster dealership.

        2. *Analysis*

        In its appeal, Mega does not challenge the Board's ruling on the issue of good cause. Rather, reasserting its prehearing claim that Roadtrek's actions in late 2009 and early 2010 constituted a de facto termination of both the Colton/Irvine and Scotts Valley franchises, for which it had not given any notice, Mega contends the protests should have been summarily sustained. Alternatively, Mega argues Roadtrek breached the franchise agreements by failing to give the contractually required 365-day notice of the terminations. Finally, Mega argues the Board erred in concluding it lacked authority to relocate the Irvine dealership.

        Mega's arguments are unavailing. As the ALJ who denied the prehearing motion in limine concluded, and the case law holds, the Board's limited jurisdiction does not extend to resolving claims a party's actions constitute a material breach of a dealer agreement. The Board was exercising its authority under section 3050, subdivision (d) to "[h]ear and decide, within the limitations and in accordance with the procedure provided, a protest presented by a franchisee pursuant to Section . . . 3070 . . . ." As noted above, section 3050 also recognizes, "[n]otwithstanding subdivision[] . . . (d), . . . the courts have jurisdiction over all common law and statutory claims originally cognizable in the courts," and "[f]or those claims, a party may initiate an action directly in any court of competent jurisdiction." (§ 3050, subd. (f).)

        Several cases have recognized the limited scope of the Board's jurisdiction. In *Mazda Motor of America, Inc. v. New Motor Vehicle Bd.*, *supra*, 110 Cal.App.4th 1451, the appellate court affirmed a judgment that directed the Board to strike a franchisee's protest challenging the franchisor's disapproval of the dealership's sale to a third party. "The Board's jurisdiction to preside over claims is limited by its statutory authorization," and "[w]here the Board's activities exceed its authorization, the Board

12

violates the judicial powers clause of the California Constitution." (*Id.* at p. 1457.) And in *Hardin Oldsmobile v. New Motor Vehicle Bd.*, *supra*, 52 Cal.App.4th 585, the court rejected the argument that the Board could consider statutory and common law claims, including one for breach of contract, where a dealer asserted a manufacturer failed to provide a proper allocation of vehicles because the dealer refused to pay bribes and kickbacks. "It cannot be said that the Board has jurisdiction over statutory and common law claims not specified in the enabling legislation merely because some of the facts forming the foundation for such a claim *could have been asserted* as the foundation of a statutory protest claim within the Board's jurisdiction." (*Id.* at pp. 593-594.)

In *Powerhouse Motorsports Group, Inc. v. Yamaha Motor Corp., U.S.A.*, *supra*, 221 Cal.App.4th 867, after Yamaha terminated a franchise while Powerhouse was in the process of selling it to a third party, Powerhouse sued Yamaha on several causes of action, including breach of contract. Powerhouse had previously filed a protest with the Board, but it was overruled because the protest was untimely. In the subsequent lawsuit, Powerhouse recovered a large judgment against Yamaha.

On appeal, Yamaha unsuccessfully argued the Board's ruling on the protest "preclude all Powerhouse . . . claims as a matter of law." (*Powerhouse Motorsports Group, Inc. v. Yamaha Motor Corp., U.S.A.*, *supra*, 221 Cal.App.4th at p. 877.) "We agree that the Board retains jurisdiction to decide the timeliness of a dealer protest, but such a determination does not preempt or limit a dealers' . . . common law rights. . . . While [the statutory procedure] provides an expeditious method for terminating a franchise under certain circumstances, it does not preclude a civil action when the facts show unreasonable conduct by the franchisor in violation of other statutes and general contract law." (*Id.* at p. 879.)

Roadtrek gave the requisite 60 days' notice of its intention to terminate Mega's franchises. For this reason, Mega's reliance on *British Motor Car Distributors, Ltd. v. New Motor Vehicle Bd.* (1987) 194 Cal.App.3d 81, is unavailing. As the ALJ

13

recognized, the forum for Mega's claim that Roadtrek's actions in late 2009 triggered a de facto termination of the franchises, is a civil action. Further, the Board did consider the parties' entire relationship, including the actions that occurred in late 2009 and in early 2010, in determining good cause existed for Roadtrek's termination of the Colton franchise. "[M]erely because some of the facts forming the foundation for" a civil action were "asserted as the foundation" for Mega's "statutory protest claim" did not expand the scope of the Board's authority to determine whether Roadtrek's actions in late 2009 and early 2010 constituted a defacto termination of the franchises. (*Hardin Oldsmobile v. New Motor Vehicle Bd., supra*, 52 Cal.App.4th at pp. 593-594, italics omitted.) Nor does the Board's ruling in Roadtrek's favor on the termination protests preclude Mega from asserting Roadtrek's conduct amounted to a material breach of their franchises in a civil action. (*Powerhouse Motorsports Group, Inc. v. Yamaha Motor Corp., U.S.A., supra*, 221 Cal.App.4th at p. 879.)

Mega's reliance on the franchise agreements' requirement that Roadtrek give 365 days' notice before it terminated the franchises also lacks merit. First, we note the 365-day notice requirement was not absolute. One exception was if Mega "fail[ed] to meet the sales commitments in section 111 [of the agreement]." Second, the Board's authority to determine the validity of Roadtrek's decision to terminate the franchises was limited by the terms of section 3070, subdivision (a), which only requires a franchisor to give 60 days' notice of the termination. Again, Mega's remedy for challenging Roadtrek's failure to give 365 days' advance notice of termination is a civil action for breach of contract.

Finally, we need not decide whether the Board erred in concluding Mega's relocation of the Irvine dealership mooted the termination protest as to that dealership. The trial court properly concluded, any error in this respect was "harmless since [the Board's] analysis" concerning "the Colton location applies equally to [the] Irvine/Westminster location."

14

Thus, we affirm the judgment denying Mega's petition.

C.  *The Modification Protests:  Nos. PR-2199-10 and PR-2201-10*

1.  *Background*

As noted, the 2006 dealer agreement gave Mega the "*exclusive right* to purchase, display and resell Roadtrek[ vehicles], parts and accessories" within a 60 mile radius of its Colton and Irvine dealerships, subject to Mega "remain[ing] in good standing," which meant it had to "stock[] and prominently display[]" a specified number of Roadtrek vehicle models at each dealership.  (Italics added.)

After Roadtrek entered into a new franchise agreement with Mega's competitor, MTRV, Mega timely filed two protests under section 3070, subdivision (b)(1).  That statute provides, "[n]otwithstanding . . . the terms of any franchise, a franchisor of a dealer of recreational vehicles may not modify or replace a franchise with a succeeding franchise if the modification or replacement would substantially affect the franchisee's sales or service obligations or investment, unless the franchisor has first given the board and each affected franchisee written notice thereof at least 60 days in advance of the modification or replacement."  In the event a franchisee timely filed a protest, "the modification or replacement does not become effective until there is a finding by the board that there is good cause for the modification or replacement." (§ 3070, subd. (b)(1).)  Mega argued the MTRV franchise "result[ed] in the modification" of its Colton/Irvine franchise, "without notice and without [Mega's] knowledge or consent," and that the "modification will substantially affect [its] sales and service obligations and investments."

An ALJ recommended dismissing Mega's modification protests.  As to the Colton dealership, the ALJ ruled there was no modification.  She found Roadtrek "sustained its burden of proof . . . that since Mega RV was no longer in 'good standing' under the Dealer Agreement," it "no longer ha[d] a franchise right to [an] 'exclusive'

15

territor[y]." As for the Irvine dealership, the ALJ ruled Mega's subsequent relocation of it to Westminster precluded Mega from maintaining the protest. The ALJ found "[f]or the Board to have jurisdiction over this protest there must be a 'franchise' in existence." Because the dealer agreement did not "encompass a relocated dealership," nor was there a "contractual relationship" between the parties "for the Westminster location," the Board lacked jurisdiction to resolve the protest.

The Board disagreed with the ALJ's proposed decisions and sustained Mega's protests. Initially, acknowledging Mega's relocation of its Irvine dealership to Westminster, the Board limited its ruling to events occurring before the move occurred.

Further, the Board rejected Roadtrek's claim there had been no modification of the dealership agreement's exclusive territory provision. According to the Board's analysis, under the Colton/Irvine dealership agreement, Mega "had an 'exclusive' Roadtrek territory within a '60 mile radii' of its . . . dealership[s]," and it found unpersuasive Roadtrek's assertion "that the exclusive territory is a term that may by modified upon the claimed loss of good standing without compliance . . . with the notice requirements of Section 3070(b)." The Board construed section 3070, subdivision (b)(1)'s introductory phrase, "[n]otwithstanding . . . the terms of any franchise, a franchisor . . . may not modify" a franchise, to mean "a franchisor must provide the Section 3070(b) notice to all franchisees in all instances in which the modification would substantially affect the franchisees' sales or service obligations or investment. To conclude otherwise negates the clear language of the statute, results in circular reasoning, and would open the door for franchisors to become 'their own judge' and decide what may be permitted to be modified by the terms of the franchise alone . . . ."

Finally, the Board concluded the modifications substantially affected Mega's sales, service obligations, and investment. It cited the testimony of Mega's principal that a dealer would never agree to a franchise without the franchisor's

16

agreement to guarantee it an exclusive territory. Further, the Board noted a dealer needed to make investments "to meet its sales and service obligations."

The trial court upheld the Board's rulings, albeit on different grounds. The court appeared to agree with Roadtrek's claim that the dealer agreement with MTRV did not modify Mega's franchise because Mega lost its right to an exclusive territory after it was no longer in good standing as defined by the dealership agreement. But the court concluded Roadtrek's actions of repossessing all of its vehicles from Mega's dealerships, refusing to cover warranty repairs, or provide incentive payments amounted to an abandonment of Mega. Also, the court concluded Roadtrek's agreement with MTRV, which had a dealership across the street from Mega's Colton dealership, violated section 3072, subdivision (a)(1). The latter statute precludes a franchisor from "establishing an additional recreational vehicle dealership" within the "relevant market area," i.e., 10-mile radius (§ 507), of a franchisee of "the same recreational vehicle line-make" absent notice and, in the event of a protest, a showing of good cause. "In summary, although it was not entirely correct for the [Board] to conclude that Roadtrek 'modified' Mega RV's franchise agreement merely by awarding a franchise to MTRV . . ., Roadtrek did modify Mega RV's franchise agreement by (1) abruptly freezing it out, and (2) permitting MTRV to move into Mega RV's relevant market area."

2. *Analysis*

Roadtrek attacks both the Board's and the trial court's adverse rulings on Mega's modification protests, arguing no modification occurred because Mega lost its exclusive territory once it was no longer in good standing. According to Roadtrek, Mega "did not have an absolute right to exclusive territory," and Roadtrek "had the discretion, as long as it acted in good faith to determine whether Mega was in good standing, [and] to add a new dealer in Mega's territory if it found Mega was not in good standing." Roadtrek further argues California case law supports its interpretation of the law.

17

We find these arguments have merit. As noted, section 3070, subdivision (b)(1) provides, "[n]otwithstanding . . . the terms of any franchise, a franchisor . . . may not modify or replace a franchise with a succeeding franchise if the modification or replacement would substantially affect the franchisee's sales or service obligations or investment, unless the franchisor has first given the board and each affected franchisee written notice" before the modification or replacement occurs. In *Ri-Joyce*, *supra*, 2 Cal.App.4th at p. 456, the appellate court recognized "[i]f a franchise agreement does grant a dealer an exclusive, unmodifiable trading area then encroachment upon that area may constitute a modification of the franchise which is subject to protest under" the New Motor Vehicle Board Act.

The Colton/Irvine dealer agreement expressly gave Mega an "exclusive right to purchase, display and resell" Roadtrek vehicles, parts, and accessories within an area described as a "60 mile radii of Irvine [and] Colton." But Mega's right to an exclusive territory was not absolute. It could be lost if Mega was no longer "in good standing," which the agreement defined as "stock[ing] and prominently display[ing] at each Dealer's sales outlets" a specified number and models of Roadtrek vehicles. The question then is who decides whether Mega was no longer in good standing when Roadtrek chose to establish a new franchise in Mega's territory.

*Ri-Joyce*, *supra*, 2 Cal.App.4th 445, provides some direction on this matter. There Mazda entered into a franchise agreement with Ri-Joyce that was subject to statutes governing automobile franchises. (§ 3060 et seq.) Like section 3070, section 3060 precludes a franchisor from modifying an automobile franchise unless it complies with the same procedural requirements found in section 3070, subdivision (b)(1). The parties' agreement reserved to Mazda the right "to appoint another dealer to promote, sell and service Mazda Products near Dealer's Approved Location" if "Mazda determine[d] it would be in the best interests of customers or Mazda to do so." (*Ri-Joyce*, *supra*, 2 Cal.App.4th at p. 457.) But the agreement did not define what constituted "near" Ri-

18

Joyce's franchise and the parties each had contrary, but reasonable interpretations of that term. (*Ibid.*) When Mazda established a new franchise in a community neighboring Ri-Joyce's location, Ri-Joyce filed a protest with the Board. The Board dismissed Ri-Joyce's protest. (*Id.* at pp. 449-450.)

The trial court granted Ri-Joyce's petition to set aside the Board's ruling and the appellate court affirmed. First, the Court of Appeal noted, "A contract that confers discretionary decisionmaking authority upon one of the parties may be construed to require an objective standard of reasonableness or may be construed to permit the party to make a decision based upon subjective factors. In either case it will be implied that the party must exercise its judgment in good faith." (*Ri-Joyce*, *supra*, 2 Cal.App.4th at p. 457.) The court then set forth the following procedure to determine whether establishing a new franchise resulted in modifying an existing franchise. "Where a franchisee asserts that a franchisor is attempting to modify his franchise the first step is to determine what rights were granted under the franchise. Within the meaning of section 3060 a franchise is a written agreement of the parties which is subject to the normal rules relating to the interpretation of contracts. [Citations.] Where a franchise agreement is reasonably susceptible to the meaning urged by a franchisee, the Board must hear and consider such extrinsic evidence as the franchisee can produce in order to determine what rights were granted under the agreement. [Citation.] Only then can it be determined whether the franchisor's proposed action constitutes a modification of the franchise. If it does not then the franchisor is entitled to prevail. If it does then the Board must proceed with further consideration of the protest. Since in this case the franchise agreement is reasonably susceptible to the meaning urged by Ri-Joyce, it was entitled to an evidentiary hearing at which it could produce evidence in support of that interpretation." (*Id.* at p. 458.)

Applying *Ri-Joyce*'s analysis to this case, the Board's first step was to determine whether Roadtrek's decision to grant a new franchise in the area covered by

19

Mega's purportedly exclusive territory constituted a modification of the latter's Colton/Irvine dealer agreement. Like *Ri-Joyce*, Mega did not have an unmodifiable exclusive territory. Rather, it had a right to an exclusive area only so long as it remained in good standing. But unlike *Ri-Joyce*, the dealer agreement at issue here explicitly defined what constituted good standing. That meant Mega needed to stock and prominently displaying a certain number and types of Roadtrek vehicles at each of its dealerships. While it was within the Board's jurisdiction to determine whether Mega was in good standing, here, it was undisputed that Mega was not in good standing at the time Roadtrek entered into its agreement with MTRV. However, the reason for its noncompliance was due to Roadtrek's repossession of Mega's inventory of Roadtrek vehicles and the parties' subsequent failure to reach an acceptable settlement concerning their outstanding financial issues. Further, the Colton/Irvine dealer agreement impliedly gave Roadtrek the discretionary authority to determine whether Mega remained in good standing. But as *Ri-Joyce* recognized, Roadtrek needed to exercise good faith in making that decision. We conclude the determination of whether Roadtrek exercised good faith is also a matter for the Board to consider, before it could decide whether a modification of the Colton/Irvine franchise had occurred.

Here, the Board failed to follow this approach. Rather, it treated the exclusive territory provision of the parties' dealership agreement as absolute, and based on that conclusion, found there was a modification.

The Board rejected Roadtrek's analysis, citing the introductory phrase to section 3070, subdivision (b)(1), which declared it applied "[n]otwithstanding . . . the terms of any franchise . . . ." But this argument proves too much. In order to determine whether Roadtrek's contract with MTRV constituted a modification of Mega's franchise, the Board needed to construe the terms of Mega's dealership agreement. In doing so, it simply considered only the exclusive territory clause, while ignoring the limitation imposed on it by the good standing requirement. "Although a franchise is technically a

20

grant of power by a governmental entity to a private person or entity," "[a] 'franchise' within the meaning of the Vehicle Code is thus a contract, and as such is subject to the normal rules relating to contracts." (*BMW of North America, Inc. v. New Motor Vehicle Bd.* (1984) 162 Cal.App.3d 980, 990.) The Board's cramped construction of the Colton/Irvine dealership agreement is contrary to the normal rules of contract interpretation. (Civ. Code, § 1641 ["The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other"].)

In response, Mega relies on the trial court's analysis of this issue. The trial court upheld the Board's decision by deciding in the first instance that Roadtrek's actions established it had not acted in good faith in concluding Mega was no longer in good standing. In addition, the trial court concluded Roadtrek had violated section 3072 by establishing a franchise within 10 miles of Mega's Colton dealership.

We reject the trial court's approach as well. Neither of the grounds it cited were the basis of the Board's decision. Thus, in rejecting Roadtrek's challenge to the Board's decision on these alternative grounds, the trial court exceeded its authority. "Judicial review in an administrative mandamus action brought pursuant to Code of Civil Procedure section 1094.5 is limited to issues raised in the proceedings before the administrative agency. [Citation.] Therefore, a trial court cannot properly grant relief based on a legal theory not presented at the administrative proceeding. [Citation.]" (*Dobos v. Voluntary Plan Administrators, Inc.* (2008) 166 Cal.App.4th 678, 688; *NBS Imaging Systems, Inc. v. State Bd. of Control* (1997) 60 Cal.App.4th 328, 337 ["The superior court erred in granting relief based on a legal theory never presented during the administrative proceedings"].)

We conclude the Board failed to proceed in the manner required by law in determining whether there had been a modification of Mega's franchise and the trial court erred in its review of the Board's decision. The portion of the judgment in case

21

No. G049534 upholding the Board's rulings on the modification protests must be reversed.[1]

D. *The Establishment Protest: No. PR-2233-10*

At the time Roadtrek entered into its franchise agreement with MTRV, section 3072, subdivision (a)(1) provided, with certain exceptions, that "if a franchisor seeks to enter into a franchise establishing an additional motor vehicle dealership within a relevant market area where the same recreational vehicle line-make is then represented, . . . the franchisor" must notify the Board and other franchisee's in the relevant market area and, if a protest is filed, establish good cause for the additional franchise. However, subdivision (b) of section 3072 listed several exceptions, one of which was that subdivision (a)(1) "does not apply to . . . [¶] . . . [¶] (5) A motor vehicle dealership protesting the location of another dealership with the same recreational vehicle line-make within its relevant market area, if the dealership location subject to the protest was established on or before January 1, 2004." The Vehicle Code defines the phrase "'relevant market area' [as] any area within a radius of 10 miles from the site of a potential new dealership." (§ 507.) It also defines the phrase "'recreational vehicle line-make' [as] a group or groups of recreational vehicles defined by the terms of a written agreement that complies with Section 331.3." (§ 3072.5.)

It is undisputed that Roadtrek did not comply with the notice requirements of section 3072 before entering into its franchise agreement with MTRV and that one of MTRV's dealerships, located directly across the street from Mega's Colton dealership, was within Mega's relevant market area. Roadtrek argued that it did not have to comply

---

[1] Of course, as previously discussed, our holding on the scope of the Board's administrative authority over protests brought under the New Motor Vehicle Board Act does not preclude Mega from arguing in a civil action that, due to Roadtrek's actions in the latter part of 2009, its entering into a franchise agreement with MTRV in 2010 breached the Colton/Irvine dealer agreement's exclusive territory provision.

22

with section 3072 because the evidence established MTRV's Colton dealership had been in existence since 1999.

The Board sustained Mega's protest. Relying on an ALJ's construction of the relevant statutes and citing the legislative history of section 3072, in particular subdivision (b)(5), the Board interpreted it to apply where "the additional dealership intended to be established: [¶] (1) Must have been in operation on or before January 1, 2004 at that location; and [¶] (2) Must have been selling the same line-make of RVs at that location as the other existing dealership(s) that would have a right to protest but for this subsection." Thus, the Board concluded, "A franchisor is required to give notice to an existing franchisee of the same line-make of its intention to establish an additional franchise if the existing franchisee is with the relevant market area of the additional dealership location, unless the additional franchise location was established as a dealer or authorized to sell and service the franchisor's same line-make on or before January 1, 2004." The trial court agreed with the Board's construction of section 3072, finding its interpretation "makes the most sense."

On appeal, Roadtrek does not cite any authority contradicting the Board's interpretation of section 3072. Rather, it simply repeats the claim that since MTRV's Colton dealership was in existence prior to January 1, 2004, the Board's interpretation of section 3072 was erroneous. Given the purpose of the New Motor Vehicle Board Act, to regulate the relationship between franchisors and franchisees, the Vehicle Code's definition of "'recreational vehicle line-make'" (§ 3072.5), and section 3072, subdivision (a)(1)'s repeated use of that phrase, we conclude the Board's interpretation of section 3072 is correct.

23

E. *The Warranty Reimbursement Protests:  Nos. PR-2206-10, PRA-2208-10 and PR-2209-10*

Section 3075, subdivision (a) declares "[a] franchisor shall properly fulfill every warranty agreement made by it and adequately and fairly compensate each of its franchisees for labor and parts used to fulfill that warranty when the franchisee has fulfilled warranty obligations of repair and servicing . . . ."  Further, "[a]ll claims made by franchisees pursuant to this section shall be either approved or disapproved within 30 days after their receipt by the franchisor," and "[a] claim not specifically disapproved in writing within 30 days from receipt by the franchisor shall be deemed approved on the 30th day."  (§ 3075, subd. (d).)  Finally, "[w]hen a claim is disapproved, the franchisee who submits it shall be notified in writing of its disapproval within the required period, and the notice shall state the specific grounds upon which the disapproval is based."  (*Ibid*.)

Mega filed three protests alleging Roadtrek violated section 3075 by failing to pay properly submitted warranty claims submitted by its Colton, Irvine, and Scotts Valley dealerships.  An evidentiary hearing was held before an ALJ, after which she issued a proposed decision sustaining Mega's protests.  The Board later adopted the ALJ's ruling.

The evidence presented at the evidentiary hearing established Roadtrek had a computer-based system for the submission and the payment or denial of warranty claims by its dealers.  Under the system, a warranty claim that is denied is listed as "canceled."  However, the system apparently does not specify the reason for declining the claim, and Roadtreks' warranty and parts coordinator admitted the system did not have a "set procedure" whereby the system would advise a dealer within a certain period of time that a particular warranty claim had been denied.

24

Beginning in mid-2008 through early 2010, Roadtrek began using approved warranty claims submitted by Mega to "offset" amounts that Roadtrek believed Mega owed to it. However, Roadtrek did not notify Mega of this policy or when it used an approved warranty claim as an offset.

The ALJ concluded Roadtrek's system of administering warranty claims violated section 3075 in two respects. First, as for its use of offsets, she found "[t]he requirement in Section 3075[, subdivision] (d) that approved claims must be 'paid' within 30 days of approval assumes that the franchisee will receive a meaningful statement identifying with particularity the warranty claim being paid, the exact amount of the claim being paid, the date the claim is being paid (or 'credited' or 'offset'), and the account or debt against which the 'offset' or 'credit' is being made. Moreover, if the franchisor elects to 'pay' by way of a 'credit' or an 'offset,' both parties <u>must</u> be in agreement not only that the franchisee approves of the manner of 'payment', but also that there is an agreed-upon debt the franchisee owes against which the 'credit' or 'offset' is made." Second, the ALJ concluded Roadtrek's denial of warranty claims failed to comply with section 3075 because "it has no procedure for timely notification to its franchisees" when a warranty claim was disapproved. As noted, the Board adopted this reasoning and the trial court upheld the Board's decision.

On appeal, Roadtrek argues the evidence fails to support the Board's rulings. It claims section 3075 does not mandate claims for warranty work or parts be paid in any specific manner and that the evidence showed it either directly paid Mega on approved claims or credited Mega with the payment.

The problem with this argument is that it does not meet the objections identified by the ALJ. The ALJ did not conclude payment of a warranty claim by credit or offset was, in itself, a violation of section 3075. In fact, one of Mega's witnesses even testified other vehicle manufacturers used credits and offsets to pay warranty claims. Rather, the ALJ found Roadtrek's use of credits and offsets violated the statute because it

25

implemented the procedure without Mega's knowledge or agreement, to satisfy obligations it believed were owed without receiving any input from Mega, and without even identifying which obligation was being credited or offset.

Further, the ALJ noted that Roadtrek's procedure when it denied a warranty claim violated the statute because it did provide a means by which a dealer would be timely informed of the denial or the specific reason for it.

We conclude the evidence supports the Board's finding that Roadtrek's system for handling warranty claims violated section 3075.

F.  *The Incentive Protests:  Nos. PR-2205-10, PR-2211-10 and PR-2212-10*

Like section 3075, under section 3076, subdivision (a) "[a]ll claims made by a franchisee for payment under the terms of a franchisor incentive program shall be either approved or disapproved within 30 days after receipt by the franchisor.  When a claim is disapproved, the franchisee who submits it shall be notified in writing of its disapproval within the required period, and each notice shall state the specific grounds upon which the disapproval is based.  A claim not specifically disapproved in writing within 30 days from receipt shall be deemed approved on the 30th day."

Also as with the warranty claims, Mega filed three protests alleging Roadtrek violated section 3076 by failing to pay sales incentive claims submitted to it by each of its three dealerships.  Roadtrek argued it satisfied section 3076 by either paying Mega for submitted incentive claims or by offsetting the amounts of such claims against Mega's obligations owed to it.

An ALJ conducted an evidentiary hearing on the incentive protests.  The evidence showed Roadtrek had a Consumer Cash Back (CCB) incentive plan and announced incentives for specified models on a weekly basis.  To qualify for an incentive payment, a dealer needed to submit the sale documents, plus an incentive form that was

26

signed by the customer. Roadtrek claimed that it was up to the dealer and customer as to how to apply the incentive payment.

Beginning in September 2008, Roadtrek began to offset approved CCB incentive claims submitted by Mega against debts Roadtrek believed Mega owed to it. However, Roadtrek did not inform Mega of its offset policy, advise Mega of the obligation against which each offset was being deducted, or the date on which it made an offset. In addition, there was evidence Roadtrek failed to pay or credit Mega on one incentive plan claim, failed to timely pay two other incentive plan claims, and complicated the determination of whether certain offsets were applied by combining offsets and crediting them against several different Mega obligations.

The ALJ proposed sustaining Mega's protests, concluding Roadtrek's system of using offsets to satisfy its CCB incentive plan claims violated section 3076 for the same reasons it found its warranty claim offset policy failed to satisfy section 3075. In addition, the ALJ concluded "there is a fundamental problem with" Roadtrek's use of offsets against incentive plan payments. Since "the customer must sign the claim form" and is "the targeted beneficiary of the program," incentive plan payments are usually used to either reduce the price of the vehicle purchased or the amount of the buyer's down payment. Thus, "remov[ing] this immediate benefit by 'offsetting' would defeat the dealer's incentive to make the sale" by forcing the dealer to pay the customer "out of its own pocket" or by cutting its profit. The Board adopted the ALJ's decision and the trial court upheld it as well.

On appeal, Roadtrek claims the evidence fails to support Mega's incentive plan protests for the same reasons it challenged the warranty claim protests. First, Roadtrek fails to explain why the policy argument that using offsets against incentive plan payments would dampen a dealer's willingness to offer sales incentives is erroneous. Second, as discussed above with the use of offsets on warranty claims, the ALJ and the Board did not find the use of offsets was per se invalid. Rather, it was the manner in

27

which Roadtrek implemented the offset policy that was found wanting.  Finally, there was evidence that Roadtrek had failed to pay one incentive claim and was late in paying two others.  Thus, we conclude the evidence supports the Board's findings on Mega's incentive plan protests.

III

DISPOSITION

The judgment in case No. G049534, is reversed as to the rulings on protests Nos. PR-2199-10 and PR-2201-10 and the case is remanded to the superior court with directions to enter a judgment setting aside the Board's decisions on these protests and directing the Board to rehear them.  In all other respects, the judgment is affirmed.  The judgment in case No. G049781, is affirmed.  Each party shall bear their own costs on appeal.

MOORE, ACTING P. J.

WE CONCUR:

IKOLA, J.

THOMPSON, J.

28